MICHAEL MORRISSEY, as Administrator, etc., of THOMAS MORRISSEY, Deceased, and Others, Claimants, *v.* THE STATE OF NEW YORK, Defendant.

(Claims Nos. 20181–20183, 20185–20192.)

Court of Claims, June 20, 1934.

*Harry E. Harding*, for the claimants.

*John J. Bennett, Jr., Attorney-General [John L. Campbell, John M. Dooley* and *Joseph L. Butler* of counsel], for the defendant.

RYAN, J. This group of eleven claims was filed under chapter 479 of the Laws of 1929, as amended by chapter 736 of the Laws of 1930, known as the Prevailing Rate of Wage Act. All of the claimants concerned were employed by the State of New York on the Ohio street lift bridge in the city of Buffalo. Four were operators and seven were bridge tenders or floormen. One of the operators, Patrick J. Callahan, Claim No. 20190, was paid four dollars and fifty cents per day, was called the chief operator and worked during the day trick or eight A. M. to four P. M. All of the others, operators and floormen alike, received three dollars per day. Patrick Callahan says that he was on call any hour of the

day or night if anything went wrong with the bridge mechanism and he would send for the State electrician. He was not a mechanic nor electrician, was physically handicapped and for thirty years prior to his employment by the State had operated a confectionery store. We find that Patrick Callahan is entitled to the same rate of pay as the other bridge operators and to no more.

We find that the prevailing rate of wage for both bridge operators and floormen in the city of Buffalo during the period covered by these claims was five dollars per day. While the State employed three floormen at the same time on one bridge the city of Buffalo itself employed twenty-eight floormen on four bridges and paid them five dollars. The Federal government employed three floormen and paid them $115 per month. Common laborers received from four dollars to five dollars per day. Thirty-five railroad crossing flagmen received $78.50 to $79.50 per month and ten received $80 per month.

Ordinarily it would appear to be fair to compare the duties of a railroad crossing flagman with those of these claimant bridge floormen. But here we have the municipality employing twenty-eight men doing the identical work which the State's employees performed. That is determinative.

As to the bridge operators, a computation of the rates paid by the Canadian National Railways, by the Federal government and by the State of New York itself shows an average of approximately five dollars. This taken into consideration with the rate so clearly and definitely fixed for the floormen brings us to the conclusion that the five-dollar rate should apply to the operators and we so find. It is true that the city of Buffalo paid much higher rates to its operators, but each was required to have a steam engineer's training and license because most of the city-owned bridges were operated by steam power.

Awards are, therefore, made in each of the above cases for the difference between what the claimants would have received at five dollars per day and what they did receive.

In certain of the cases the State employee had died before the claim was filed and the prosecution thereof is made by the administrator. This court has already determined in another case that the cause of action survived and that the special enactments are to be regarded as enabling acts permitting the claims to be filed. (Claim No. 20547, *Oley* v. *State.*)

In certain other of the cases another question is raised by the Attorney-General. That is, that the date of verifying or at least of filing the claim determines the period of time for which claimant

can recover, although he continued in the State's employ beyond that date. We think that under chapter 736 of the Laws of 1930 the claimant is entitled to have his recovery computed to September 15, 1930, together with interest from that date and have so found.

BARRETT, P. J., concurs.